Brockebtbrough, J.
Upon the eviction of Walmsley by Hickman in October 1822, he had a plain remedy at law against Mrs. Turner, on the covenant in her deed to him: and accordingly he commenced his action against her to recover back the money which he had paid her. She likewise, had a remedy at law against Jackson, to recover the amount of the purchase money which she had paid to him. To avoid circuity of action, and probably with the view of giving Mrs. Turner as little trouble as possible, it was agreed between Walmsley and her, that he should dismiss his suit against her, and as her assignee should bring his action of covenant directly against Jackson on the warranty contained in his deed to her. A similar course had been pursued in Threlkeld v. Fitzhugh, 2 Leigh 451. and is sanctioned by authority, 2 Thom. Co. Litt. 325. note G. 3. The agreement between them was, that he was to carry on the suit partly for her benefit and partly for his own; that as assignee he should recover the whole amount of what she was entitled to receive from Jackson, and after retaining for himself the principal and interest which he had paid her, should pay over the balance to her. Of this agreement, if, appears from the evidence in the cause, particularly from Jackson’s own affidavit (which is made evidence by the answer of his administratrix) and the deposition of Jacob Israel, that Jackson was fully apprised. Walmsley brought the suit against Jackson; but in the progress of it, he aban *124 doned his assignor’s rights, and took a confession of judgment from Jackson, in October 1823, for 1057 dollars; which was equal to the principal sum he had paid to her on account of the purchase in 1816, and nearly one year’s interes(;. jt wag a]-,0U(; tjle sulxl) exclusive of his costs, that he was entitled to, the eviction having taken place not quite a year before that time. This was an act of gross fraud on the part of Jackson, and probably of collusion on the part of Walmsley. He says, he was deceived by Jackson; but the circumstance of his taking good care of himself, whilst he neglected the interest of her who had trusted him with it, indicates that he combined with Jackson. A judgment having been thus rendered in behalf of her assignee, on the covenant which she had taken from her vendor, what situation did it place her in ? Did it not deprive her of her legal remedy against Jackson on his warranty to her? Could she maintain another action of covenant against him on that warranty ? Certainly not. The judgment on it in behalf of her assignee, was a bar to any suit at law by her. The covenant was integral, and could not be divided into two parts.
Thus excluded from the court of law, she has resorted to a court of equity for relief; and she is met here by the objection, that this is not the proper forum. But, surely, she is not to be deprived of all remedy against Jackson. If she had been guilty of laches in asserting her claim at law, the court of equity might well have closed its doors against her; but this was not the case. Her assignee promptly, with his concurrence, resorted to the court of law. His subsequent abandonment of her rights ought not to be visited upon helas a fault, nor ought the fraud of her vendor to work an injury to her. The court of equity is the peculiar forwn for the investigation of fraud, and for vacating fraudulent proceedings, and should not deny its aid to one who has been their victim.
The counsel for the appellants said, that Mrs. Turner had a plain legal remedy against Walmsley on his bonds for the purchase money. It is true that she might have *125 sued and recovered judgments on those specialties at law, but wordd it have been conscientious in her to have done so 1 After Walmsley was evicted, he had a rightful claim against her to recover back the 1000 dollars he had paid her; and it seems to me, that it would have been against equity for her to have recovered on those specialties, the consideration of which had totally failed. If judgments had been recovered against him, he would have resorted to equity for relief, and the very same parties who are now before the court, would have been before the court in that case, with this difference only that Walmsley, instead of Mrs. Turner, would have been the plaintiff. An injunction could not have been refused to Walmsley, but I will not undertake to say that he might not, on the final hearing, have been excluded from the court, as not having come into it with clean hands, if the evidence had been the same with that which exists in this case. But admitting that Mrs. Turner had a naked remedy at law against Walmsley on his bonds, and that it was questionable whether equity would give him relief, yet that could not deprive her of her right to equitable relief against Jackson. Both Walmsley and Jackson had done her wrong; and she might, I think, elect to sue both in equity, rather than sue the one against whom there remained a legal remedy. Let it be remarked, that until Walmsley's collusion with Jackson, in taking his confession of judgment, there was nothing in Walmsley's conduct, which could by possibility have prevented him from going into a court of equity to defeat the recovery on his bonds: the false step at that time taken by both of them, whilst it deprived her of her legal remedy on Jackson's warranty, necessarily gave her a right to equitable relief against him, and she ought not to be turned away from that right, to commence a. legal pursuit against another person, which she believed to be unconscientious, and which might, after a long chase, prove unavailing. The rule that shuts the court of equity against a party who has a clear legal remedy, applies only, I apprehend, to cases in which such remedy may be had against the same person, as to whom the equitable relief is sought, and not against a different person.
*126 It was further contended, that Mrs. Turner is barred of her relief in equity against Jackson, by her proceeding on the rule in the court of law, and the judgment of the court 'on that rule. I cannot think so. In the action which Walmsley brought against Jackson, and in which the latter confessed a judgment, Mrs. Turner was not a party. Although by agreement it was prosecuted partly for her benefit, yet she was not in court, and was not bound to take the rule for which she did apply. As it was not her duty to proceed at law, her failure to do so, could not have deprived her of her right to assert her equitable claim. However, she made an effort to get justice in the court of law, by obtaining a rule for setting aside the judgment confessed by Jackson to Walmsley, whereby her rights were defeated: but so soon as she entered the court of law, she was excluded. The court of law decided, that she had not such an interest in the suit as authorized her to control the plaintiff, and that it was competent for him to accept such confession as he might think proper. It was not that there was no fraud practised on her, but that she was not before the proper tribunal; she came in collaterally, and the judge decided that she was an intruder there. The rule, then, was -discharged, and she was no longer in court. In endeavouring to procure redress in a court of law, she did more than she was bound to do; and if the term of the court of law had ended before she had been informed of the fraudulent judgment, she could never have made the application which she did. She had not then such clear legal remedy, as would deprive her of the right to come into a court of equity, to maintain her equitable rights.
Being, then, properly in the court of equity, the next question is, whether the decree rendered in her favor is correct. It must be admitted that it is erroneous in giving her to.o much, and in giving a sum of money to Walmsley to which he is not entitled.
, Threlkeld’s adm’r v. Fitzhugh’s ex’x, 2 Leigh 451. appears to me to have settled the law on the safest foundation. Where there .has been an eviction, the measure of damages *127 to be recovered against the vendor on his covenant of warranty, is not the value of the land at the time of eviction, but the purchase money with interest, not from the day of sale, but from the date of the actual eviction, the costs incurred by the vendee in defending the title, and such damages as he may have paid to the person evicting him. According to this rule, what should have been the recovery here'? The purchase money paid by Mrs. Turner to Jackson in 1812, was 1567 dollars. When she sold to Walmsley, she received from him 1000 dollars. The eviction occurred in October 1822. Walmsley having settled his part of the claim with Jackson is entitled to nothing more, either for principal, interest, costs or damages, and the decree is erroneous in giving him 357 dollars. And Mrs. Turner should have had a decree only for 567 dollars the balance of purchase money after deducting the 1000 dollars to which Walmsley was entitled, with interest from October 1822, when the eviction took place, and the costs which she incurred, if any, in defending the suit of Hickman against herself and the others. As to the damages, it appears that they were all paid to Hickman by Jackson; and, therefore, she cannot recover any against his estate. There is also error in the decree in not giving a day to the infant defendants to shew cause against the decree, when they shall come of age.
I am of opinion, that the decree be reversed, and one entered according to the principles I have slated.
Carr, J.
I was very much struck with the view of this case taken by the counsel for the appellant, when he contended, that this bill was without foundation, because the plaintiff, though the vendor of the land, and though her vendee had been evicted, had not suffered, and never could suffer; as her vendee, by passing her by and suing her vendor, had affirmed his contract with her, had taken his recourse over, and could never after disturb her, or dispute the payment of his bonds to her. An attentive examination of the case, however, has presented it in other aspects. Jack *128 son sold the land to Mrs. Turner, for 1567 dollars, and conveyed by deed with warranty: Mrs. Turner sold to Walmsley for 2345 dollars, with warranty also: Walmsley was evicted; he had paid 1000 dollars of the purchase money, and the rest was due by different bonds. These bonds, it is clear to me, none of the parties had an idea (after the eviction) would or ought to be paid: all their subsequent proceedings seem to have taken this for granted. The natural course of proceeding was for Walmsley to sue Mrs. Turner on her warranty, and for her to turn upon her vendor; and we see that Walmsley did bring suit against her, to recover the 1000 dollars. This most clearly evinced, that he had no idea that he remained liable for the bonds unpaid; nor did Mrs- Turner think so; for she was about to pursue her vendor, and thus meet the recovery against her, but to save trouble, and make one suit do for two, it was agreed between her and Walmsley, that he should dismiss his suit against her, and sue Jackson on his warranty; and as in this suit he would recover the whole purchase money which Mrs. . Turner had paid, it was agreed, that he should out of this pay himself the 1000 dollars, which he had paid her, and that she should have the balance of the recovery. That this was the agreement between them is in clear proof. The suit against Jackson, then, could not be considered as a confirmation by Walmsley of his contract with Mrs. Turner, and an admission of his liability for the unpaid bonds: the agreement shewed an opposite understanding. It was an agreement too entitled to the favor of the courts; the consideration being to settle their controversy, and diminish litigation. And this would have been its effect, if Walmsley had kept faith; but by a gross breach of it, he took a judgment by confession for 1057 dollars, and released the warrantor from all further claim. Mrs. Timer, at the same term, obtained a rule of the court upon the parties, to shew cause why the judgment should not be set aside, upon the ground that it was collusive, and in fraud of her rights. The circuit court heard the evidence and decided (not that there was no fraud—by no means—but) that Mrs. Turner *129 had not such an interest in the suit, as authorized her in any way to control the plaintiff in his agreements in relation thereto ; and therefore, the judgment was suffered to stand. It was said, this judgment binds the parties, and shuts up this point; and, that if erroneous, there should have been an appeal. That the judgment binds the parties, is most clear; but Mrs. Turner was no party; it was on that very ground that she was turned from the court of law. How could she have appealed ? how take up a suit between other parties ? Would that court which had, and properly, pronounced her no party, have suffered her to appeal? This judgment, then, of the circuit court, did not, in my mind, preclude her. She has filed her bill against Jackson, charging that he knew of the contract between her and Walmsley, under which Walmsley’s action was brought, and that with a view to defraud her of that part of the recovery which was to go to her, he contrived to have the judgment entered for 1057 dollars only. On this ground, she claims of him the sum which she would, but for the fraud, have recovered at law; and if she fixes upon him a knowledge of the agreement, I think she is entitled to a decree. The administratrix of Jackson in her answer relies on the judgment at law, and brings forward the evidence which was before the court of law, on the hearing of the rule. I shall not resort to Jackson’s own affidavit, because as it would not be evidence for him, it ought not to be used against him. But the evidence of Israel, both in the law case and in this, is satisfactory to my mind, to shew a full knowledge in Jackson, of the arrangement between Mrs. Turner and Walmsley. I am of opinion, then, that Mrs. Turner is properly in equity, and has a right to a decree; but I think there are in the decree rendered, several errors, for which it must be reversed. 1. It is for too much: it gives her interest on the purchase money from 1812, the date of her contract, to 1822, when the eviction took place. Now, she and her vendee held the land all that time. In Threlkeld v. Filzhugh, this court, after solemn consideration, and with a view to settle this important question, decided, that the proper measure of damages upon *130 eviction, is the purchase money with interest from the date . , ... , or the actual eviction,—the turning out of possession,—and the costs incurred in defending the title, and such damages as the vendee may have paid, or may be shewn to be clearly t0 pay, to the person who evicted him. In this case, there was no actual eviction till October 1822; and of course no interest till then. Nor has Mrs. Turner been called on, nor can she be called on, to pay any damages ,• for Jackson has paid them all. The true amount then of her recovery, I think, should be 567 dollars, with interest from October 1822, and any costs she may have paid in the suit of Hickman against her and Jackson. 2. The decree is erroneous in giving 357 dollars to Walmsley: he was not entitled to a cent beyond the 1057 dollars, which he received from Jackson under their agreement, and his confession of judgment. If there was fraud in that transaction, Walmsley was the most guilty party in it, and must be bound by the contract. Equity will never give him aid. 3. There is another error in this decree: the lands of infants are subjected to the debt, and yet no day is given them to shew cause against this decree, when they shall come of age: this I consider clear error. It will be observed, that there is nothing here to break the descent; no devise to trustees to sell: the title is in the infants, and no decree taking it out of them can be regularly made, without giving them a day; 2 Madd. Oh. 352. and the many cases there cited. I am for reversing the decree, and entering the proper decree here.
Brooke, J.
The relation in which Mrs. Turner stood to Jackson, her vendor, and to Walmsley, her vendee, upon the covenants in Jackson's deed to her, and in her deed to Walmsley, must be the ground of decision in this case. Walmsley being evicted by Hickman, from the land purchased by Mrs. Turner of Jackson, and sold by her to Walmsley, he might have sued her on her covenant of warranty to him, and recovered back the purchase money he had paid her, with interest from the date of the eviction, and such costs and damages as he had sustained by reason *131 of the eviction, according to the principles laid down in Threlkeld v. Fitzhugh. And Mrs. Turner, having sold the same laud to Walmsley, for more money than she had paid Jackson for it, might have sued Jackson for the full amount of the purchase money she had paid him. But Walmsley after suing her, dismissed his suit, and sued Jackson on his covenant of warranty to Mrs. Turner, as her assignee. I am not sure, that in that suit, Walmsley could have recovered more of Jackson than he could have recovered in his suit against Mrs. Turner, and not that amount, unless (as was the case) the amount paid Jackson by Mrs. Turner, was equivalent to his claim against her. If that amount had been less, I do not see how he could have made Jackson liable for more than he could have recovered of her, and the costs and damages of his eviction. If Walmsley, suing as assignee of Mrs. Turner, could recover more, the excess must, in conscience, belong to Mrs. Turner: she, holding Walmsley s bonds for the balance of the purchase money due her, might have sued him at law; and if he in-joined her on the ground of his eviction from the land, equity would relieve him only on his paying to Mrs. Turner the excess of his recovery against Jackson, over the amount he had paid her as purchase money, and the costs and damages of the eviction. But Walmsley not having recovered of Jackson more than he was entitled to recover of Mrs. Turner, or very little more, I think Jackson must be held liable, in equity, to Mrs. Turner for the balance, 567 dollars, of the purchase money paid him by her; I say, in equity, for I cannot see how she could have recovered at law upon the same covenant on which Walmsley was entitled to recover, and had recovered, as her assignee. Therefore, I think, she came properly into the court of equity. But if Walmsley could have recovered of Jackson the whole 1567 dollars purchase money paid him by Mrs. Turner, in that case, too, she was well in the court of equity, on the ground of the fraud practised by Walmsley and Jackson; by Walmsley, in violating his agreement with her, to prosecute her rights as well as his own, in his suit against Jackson; and *132 by Jackson, who, with knowledge of that agreement, confessed a judgment, in total disregard of her just claim. So far, then, I approve the decree. As to the objection, that Mrs. Turner was concluded by the discharge of her rule in the court of law, there is nothing in it: I do not think she was rectus in curia there; she is so here.
But I concur in the opinions of my brothers, that the decree is erroneous in the particulars pointed out by them, and that, therefore, it must be reversed, and a correct decree entered here,
Decree reversed.